WILLIAM WALDORF V. ISAAC HAGGIN.

FILED MARCH 20, 1894.   No. 5537.

**Trial:** FAILURE TO GIVE INSTRUCTION ON ISSUE.  The failure or refusal of a district court to instruct the jury on the only material issue in the case being tried is reversible error.

ERROR from the district court of Saline county.  Tried below before MORRIS, J.

*E. E. McGintie* and *Robert Ryan,* for plaintiff in error, cited :  *Klosterman v. Olcott,* 27 Neb., 685; *Sandwich Mfg. Co. v. Shiley,* 15 Neb., 111; *McPherson v. Wiswell,* 19 Neb., 117 ; *Grim v. Robinson,* 31 Neb., 542 ; *Uhl v. Robison,* 8 Neb., 277.

*Abbott & Abbott, contra.*

RAGAN, C.

On the 20th of May, 1889, Isaac Haggin was the owner of, and living upon, a quarter section of land in Saline county. On that day he conveyed it by a warranty deed, recorded three days later, to his brother, John B. Haggin.  On the 18th of November, 1889, John B. Haggin and his wife, by warranty deed, reconveyed this land to Isaac Haggin, which deed was recorded on the 24th of November, 1890.  On the 8th day of January, 1890, John B. Haggin and his wife conveyed the land by warranty deed to one J. William Haggin.  This deed was recorded on the 22d of the same month, and on that day J. William Haggin sold and conveyed the land to the plaintiff, William Waldorf, who brought this suit in ejectment against Isaac Haggin.  Isaac Haggin set up as a defense to the action that the conveyance made on the 20th of May, 1889, to John B. Haggin, his brother, was in pursuance of a sale then

made to him of the premises, and the consideration of the
conveyance was that John B. Haggin assumed the pay-
ment of certain incumbrances on the land and would pay
him, Isaac, the remainder of the purchase price in money,
(what amount John B. Haggin was to pay, however, is
not stated in the answer); that he, Isaac, was to, and did,
remain in the possession of the premises conveyed, in pur-
suance of a verbal agreement with his grantee to that ef-
fect, until he should pay the balance of the purchase
money; that such balance of purchase money was not paid,
and on the 18th day of November, 1889, the contract of
sale was rescinded, and John B. Haggin and his wife re-
conveyed the premises to him, Isaac, by a warranty deed;
that he was then in the exclusive possession of the prem-
ises, and had since remained in the possession, claiming
title under this deed of November 18, 1889, although the
deed was not recorded until the 24th of November, 1890;
and that the deed made by John B. Haggin and wife on
the 8th day of January, 1890, to J. William Haggin, and
the deed from him to Waldorf on the 22d of January,
1890, were made in fraud of his, Isaac's, rights, and that
plaintiff and plaintiff's grantor were not innocent purchas-
ers of the premises without notice, as his, Isaac Haggin's,
possession of the premises at said time was notice to Wal-
dorf and his grantor of his, Isaac Haggin's, rights. Wal-
dorf replied to this answer by general denial. Isaac Haggin
had a verdict and judgment below, and Waldorf brings the
case here for review.

The first error alleged is that the verbal agreement
between John B. Haggin and Isaac Haggin, under and
by which he held possession of the premises conveyed
until such a time as the balance of the purchase money
should be paid, was void, as a secret trust reserved in his
favor; but in the view that we take of the case this point
is wholly immaterial. At the time that John B. Haggin
and wife conveyed the premises to Waldorf's grantor, to-

wit, January 8, 1890, Isaac Haggin was in the actual possession of these premises, claiming title thereto by virtue
of a deed from John B. Haggin under date of November
18, 1889.   At the time that John B. Haggin conveyed
the premises to Waldorf's grantor, Isaac was not in the
possession of the premises claiming to hold such possession by virtue of the verbal agreement made with his
brother on May 20, 1889.   That agreement, according to
Isaac Haggin's theory of the case, was rescinded by the
reconveyance made to him by John B. Haggin on November 18, 1889.   There is no dispute in this case that, at the
time Waldorf's grantor obtained title to these premises
from John B. Haggin, and at the time that Waldorf obtained his title to the premises, Isaac was in the possession
of these premises, claiming absolute title to them by virtue
of the reconveyance made to him by his brother, John B.
Haggin, on November 18, 1889.   This possession, then,
of Isaac Haggin was of itself notice to Waldorf and his
grantor of Isaac Haggin's rights to the land.   Isaac Haggin's case must stand or fall on the reconveyance he alleges
his brother, John B. Haggin, made to him on November
18, 1889.   If that conveyance was made and delivered as
alleged by Isaac Haggin, then his title to the premises
must prevail over that of Waldorf.   On the other hand,
if the conveyance under which Isaac Haggin claims, dated
November 18, 1889, was not in fact so made, but if such
conveyance was in fact a forgery, then Waldorf's title and
right to the possession of these premises is superior to the
claim of Isaac Haggin.

On the trial the evidence introduced by Isaac Haggin
tended to prove that on the 18th day of November, 1889,
his brother, John B. Haggin, and his wife duly made, acknowledged, and delivered to him the deed in evidence,
conveying the premises in question to him, Isaac Haggin,
and by virtue of that deed he was in possession of the
premises at the time the suit was brought, and had been

since the execution of the deed, claiming title under it. On the other hand, the evidence offered on the trial by Waldorf tended very strongly to show that John B. Haggin and his wife, at the time they signed the deed of November 18, 1889, did so not knowing that it was a deed of the premises, and thinking and believing it was a writing or paper which gave them a title or right to the possession of some horses which they say Isaac Haggin had, before that, agreed they should have. John B. Haggin testified that he never did sign a deed of these premises to Isaac Haggin; that he signed the paper at the time and place that the deed purports to have been signed; that he was then seventy-five years of age and had not been able to see to read for ten years; that he had owned the premises in controversy from the 5th day of May, 1889, until he conveyed them to J. William Haggin; that he purchased them from his brother, Isaac Haggin, and paid for them by assuming certain incumbrances on the land and paying his brother a balance of $—— in cash; that he renewed the mortgages on the land in his own name, and that on the 18th of November, 1889,—the date of the deed which Isaac Haggin alleges that he, John B. Haggin, made,—Isaac Haggin was then indebted to him and still remains indebted to him. His wife testified that she signed a paper at the time and place that the deed purports to have been signed, but that she thought that the paper she signed was a writing which granted to herself and husband the title or possession of the horses, as mentioned above, and that she was at that time sixty-nine years of age.

From what has been stated above of the pleadings and evidence it will be seen that the real issue in this case was whether or not the deed under which Isaac Haggin claims title and possession of the premises, alleged by him to have been made and delivered to him by his brother and wife on November 18, 1889, was in fact made, or whether the grantors in such deed were imposed upon and deceived,

and signed the paper, when in fact they thought they were executing something else.

The learned judge who presided at the trial below, and for whom, both as a gentleman and a jurist, we have the highest respect, refused all instructions asked by both parties to the suit and charged the jury orally.    This charge covers more than twelve pages of closely printed matter, and in this charge the only reference to the real issue in the case is contained in the following excerpt: "The plaintiff further makes this claim that the deed from John B. Haggin and his wife, which they allege was made subsequently to the deed from John B. Haggin, they allege was not in fact made by John B. Haggin and his wife, but that John B. Haggin and his wife had a supposition that they were signing some other paper.    You must remember this is not a suit by the plaintiff to recover any damages for any cheat perpetrated on him.    This is a suit where he alleges that he has a legal interest in the land and is entitled to the possession of it, and defendant has the right in opposition to that to set up any answer that he may, showing in himself or another a legal interest in the land, or any equitable defense.    He has the right to put up either."    This instruction was not applicable to the evidence introduced to prove and disprove the issue.    Waldorf was entitled to an instruction to the effect that if the jury found that the deed of November 18, 1889, under which Isaac Haggin claimed title and possession to the premises in controversy, was not in fact made and delivered by John B. Haggin and wife; that at the time they signed the conveyance they were imposed upon, deceived, and fraudulently induced by Isaac Haggin to execute the deed, when in fact they thought and believed that they were executing some other paper, then Waldorf was entitled to a verdict at their hands for the title and possession of the premises.    The execution and delivery of the deed under which Isaac Haggin claims these premises was put in issue both by the

pleadings and the proof, and Isaac Haggin's case depended upon the question as to whether his brother, John B. Haggin, and his wife did actually make the deed of reconveyance to the premises to him; and on this issue it was the duty of the trial court to instruct the jury, and his failure to do so was error. It is true, as the learned court said, that the suit was not brought by Waldorf to recover damages for any cheat perpetrated upon him; but this language of itself had a tendency to mislead the jury. It was an intimation to them that whether the deed under which Isaac Haggin claimed was fraudulently obtained by him from his brother was immaterial, so far as Waldorf was concerned; but it was not immaterial. Waldorf had succeeded to the rights of John B. Haggin in these premises. If John B. Haggin had no title to the premises when he conveyed them to Waldorf's grantor, then Waldorf perhaps had no title; but Isaac Haggin's entire case, both his title to the premises and his right to the possession of them, depended entirely upon the validity of this conveyance which he alleges his brother made to him.

The judgment of the district court must be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

RYAN, C., having been of counsel, took no part in the decision of this case.

POST, J., not sitting.